## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| JOHN DEMJANJUK,<br>847 Meadow Lane<br>Seven Hills, Ohio 44131<br><br>     Plaintiff,<br><br>v.<br><br>ALBERTO R. GONZALES, Attorney General of<br>the United States; MICHAEL J. CREPPY, Chief<br>Immigration Judge, U.S. Department of Justice;<br>and UNITED STATES DEPARTMENT OF<br>JUSTICE,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil No._____ |

---

## COMPLAINT

John Demjanjuk, plaintiff, for his complaint, states as follows:

### JURISDICTION

1.  This is a complaint seeking injunctive and declaratory relief against the defendants, Alberto R. Gonzales, the Attorney General of the United States; Michael J. Creppy, the Chief Immigration Judge; and the United States Department of Justice.

2.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2201.

3.  This action arises under the Immigration and Nationality Act, Title 8, United States Code, Act of June 27, 1952, as amended, Pub. L. No. 82-414, Ch. 477, 66 Stat. 163, and in

particular under INA § 240, 8 U.S.C. § 1229a, and regulations issued by the Attorney General thereunder.

**VENUE**

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

**BACKGROUND FACTS REGARDING THE FIRST DENATURALIZATION CASE AGAINST MR. DEMJANJUK**

5.     The plaintiff, John Demjanjuk, was born in Ukraine on April 3, 1920.  At the time, Ukraine was a part of the Soviet Union.

6.     In 1940, the Soviet authorities drafted Mr. Demjanjuk into the Red Army.

7.     In May 1942, during the Second World War, German forces captured Mr. Demjanjuk in fighting in the Crimea.

8.     In May 1945, at the end of the Second World War, Mr. Demjanjuk was in the American occupation zone in Germany and was unwilling to return to the Soviet Union.

9.     In February 1952,  Mr. Demjanjuk, his wife and daughter, immigrated to the United States under an immigration visa issued pursuant to the Displaced Persons Act of 1948, Pub. L. No. 80-774, 62 Stat. 1009, amended by Pub. L. No. 81-555, 64 Stat. 219 (1950).

10.     In 1958, Mr. Demjanjuk was naturalized in the United States District Court for the Northern District of Ohio.

11.     In 1977, the U.S. Department of Justice filed a complaint against Mr. Demjanjuk in the United States District Court for the Northern District of Ohio, *United States v. Demjanjuk*, No. CV 77-923, seeking to revoke his naturalization on grounds that he had been "Ivan

the Terrible," a notorious guard at the German extermination camp at Treblinka, Poland in 1942 and 1943.

12.     At the trial of the case in 1981, the Office of Special Investigations ("OSI"), a unit established within the Criminal Division of the Department of Justice, procured and introduced eye witness testimony from five Treblinka survivors and from one former German guard at Treblinka, all of whom testified that they were familiar with "Ivan the Terrible" of Treblinka and identified Mr. Demjanjuk as being that person.

13.     On June 23, 1981, the United States District Court for the Northern District of Ohio entered an order revoking and vacating the 1958 naturalization order and canceling Mr. Demjanjuk's Certificate of Naturalization on the grounds that the order and Certificate were illegally procured and were procured by willful misrepresentation of material facts under 8 U.S.C. § 1451(a). 518 F. Supp. 1362 (N.D. Ohio 1981).    The district court's decision was sustained on appeal. (*United States v. Demjanjuk*, 680  F.2d. 82 (6th Cir. 1982)).

14.     The government of Israel sought Mr. Demjanjuk's extradition to face murder charges in that country.  The extradition request was granted.  *Matter of Extradition of Demjanjuk*, 612 F. Supp. 544 (N.D. Ohio 1985). The district court subsequently denied a Mr. Demjanjuk's petition for a writ of habeas corpus, *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985), a decision that the court of appeals affirmed.  *Demjanjuk v. Petrovsky*, 776 F.2d 571 (6th Cir. 1985).

15.     In 1986, Mr. Demjanjuk was extradited to Israel to face murder charges for his alleged activities as "Ivan the Terrible" at the extermination camp at Treblinka, Poland.

16.    In 1988, the Jerusalem District Court convicted Mr. Demjanjuk on charges that he had been "Ivan the Terrible" of Treblinka responsible for multiple murders at that extermination camp.   The Jerusalem District Court sentenced Mr. Demjanjuk to death.

17.    In 1993, the Israeli Supreme Court reversed Mr. Demjanjuk's conviction on the grounds that documents obtained from the former Soviet Union established that "Ivan the Terrible" of Treblinka had been an individual with the name Ivan Marchenko, and was not Mr. Demjanjuk.

18.    In 1992,  the Sixth Circuit, *sua sponte*, reopened *Demjanjuk v. Petrovsky,* the habeas corpus proceeding challenging the extradition of Mr. Demjanjuk.

19.    In 1993, the Sixth Circuit, acting in the reopened habeas proceeding,  vacated the judgment of the district court and its own judgment in the extradition proceedings on the ground that the judgments were wrongly procured as a result of prosecutorial misconduct that constituted fraud on the court.  *Demjanjuk v. Petrovsky,* 10 F.3d 337 (6th Cir. 1993).

20.    In 1998, the United States District Court for the Northern District of Ohio vacated the 1981 denaturalization order on the grounds that (*United States v. Demjanjuk* 1998 U.S. Dist. LEXIS 4047, Feb. 20 1998):

> (1) The prior judgment of this Court with respect to the Trawniki matter cannot be so insulated from the fraud on the Court found by the Sixth Circuit to have infected the Treblinka findings as to remain valid.
> (2)   The OSI attorneys acted with reckless disregard for their duty to the Court and their discovery obligations in failing to disclose the interview with Reimer and the existence of the memorandum concerning it, and this behavior constitutes further fraud upon the Court.

4

(3) The Dorofeev evidence, when considered in light of the Treblinka fraud and the Reimer matter, casts further doubt on the validity of the Trawniki finding.

## BACKGROUND FACTS REGARDING THE SECOND DENATURALIZATION CASE AGAINST MR. DEMJANJUK.

21.     In 1999, OSI filed a new complaint against Mr. Demjanjuk seeking his denaturalization on the grounds that, during the Second World War, he had served as a guard for the Germans at their extermination camps at Sobibor and Maijdanek, Poland, and also at the concentration camp at Floßenbürg, Germany. *United States v. Demjanjuk*, CASE NO. 1:99CV1193.

22.     On February 21, 2002, the United States District Court for the Northern District of Ohio again vacated the 1958 naturalization order and cancelled Mr. Demjanjuk's Certificate of Naturalization. *United States v. Demjanjuk*, 2002 WL 544622 (N.D. Ohio Feb. 21, 2002) (No. 1:99CV1193), *aff'd* 367 F.3d 623 (6th Cir. 2004), *reh'g denied* (June 28, 2004), *cert. denied, sub nom. Demjanjuk v. United States*, 73 USLW 3273 (No. 04-6448).

## THE REMOVAL PROCEEDINGS BROUGHT AGAINST MR. DEMJANJUK

23.     On December 17, 2004, the OSI and the United States Department of Homeland Security served Mr. Demjanjuk with a Notice to Appear, instituting removal proceedings against him pursuant to Section 240 of the Immigration and Nationality Act, 8 U.S.C. § 1229a (2000).

24.     The removal proceedings against Mr. Demjanjuk are docketed before the Department of Justice,  as Homeland Security File No. A08 237 417.

25.     At some date on or after December 17, 2004, persons unknown to Mr. Demjanjuk assigned the removal case against him to Michael J. Creppy, the Chief Immigration Judge in the United States Immigration Court.

26.     Under the regulatory scheme at Title 8, Code of Federal Regulations, the Attorney General divides the tasks of the Chief Immigration Judge and the tasks of the Immigration Judges into two disparate functions.  See 8 CFR §§ 1003.9 (Chief Immigration Judge), 1003.10 (Immigration Judges).

27.     The position of Chief Immigration Judge is solely created by regulation.  The only authority of the Chief Immigration Judge is that found at 8 CFR § 1003.9.

28.     The authority of the Chief Immigration Judge extends to the "general supervision, direction, and scheduling of the Immigration Judges in the conduct of the various programs assigned to them."  8 CFR § 1003.9.  The Chief Immigration Judge has no express authority to hear immigration removal proceedings or to decide whether an alien is removable.  Id.

29.     In contrast, the regulations expressly provide that Immigration Judges "shall exercise  the powers and duties . . . regarding the conduct of exclusion, deportation, removal, and asylum proceedings and such other proceedings which the Attorney General may assign them to conduct."  8 CFR § 1003.10.

30.     Nothing in the regulations authorizes the Chief Immigration Judge to exercise the authority vested in an Immigration Judge.  The Chief Immigration Judge's duties are exclusively administrative in nature, whereas the sole regulatory authority to preside over removal proceedings rests with the Immigration Judges.  Compare 8 CFR § 1003.9 with 8 CFR § 1003.10.

31.    On April 26, 2005, Mr. Demjanjuk filed with the Immigration Court a "Motion to Reassign to Arlington Immigration Judge," ("Motion to Reassign") after negotiations with OSI to agree to reassignment failed.

32.    The Motion to Reassign pointed out that the Executive Office for Immigration Review, as well as its components, the Chief Immigration Judge and the Immigration Judges, can exercise only such authority as has been conferred on them by regulation and asked that the removal proceedings against Mr. Demjanjuk be transferred on a random basis to a sitting immigration judge with authority over cases arising in the Cleveland, Ohio area, where the instant removal proceedings are venued.

33.    On May 10, 2005, the OSI filed its opposition to Mr. Demjanjuk's Motion to Reassign.  On May 20, 2005, Mr. Demjanjuk filed his reply in support of the Motion to Reassign.

34.    As of the date of filing this complaint, the Immigration Court has not acted to reassign the removal proceedings to an Immigration Judge having jurisdiction under the regulations, and the Chief Immigration Judge continues to preside over the removal proceedings against Mr. Demjanjuk.

35.    No factual questions at issue in the removal proceeding against Mr. Demjanjuk bear on the issue of whether the Chief Immigration Judge has authority under the regulations to conduct such a proceeding.

36.    The Chief Immigration Judge has set a scheduling conference for June 30, 2005 to schedule further proceedings in the OSI's removal action against Mr. Demjanjuk.

37.    The Chief Immigration Judge has before him a fully briefed motion filed by the government regarding the application of collateral estoppel.  His decision on this motion will

have a significant impact on the nature and extent of future proceedings in the removal case.  Unless
this Court intervenes, the Chief Immigration Judge will continue to issue procedural and substantive
rulings that meaningfully impact Mr. Demjanjuk's case.

## COUNT NO. 1
(Declaratory Order -- Chief Immigration Judge
Acting Ultra Vires)

38.    The allegations of paragraphs 1-37 are restated, realleged and incorporated
herein.

39.    The Chief Immigration Judge, in purporting to conduct removal proceedings
against Mr. Demjanjuk, is acting ultra vires, beyond the scope of authority conferred on him by the
regulations as authorized by the Attorney General.

40.    Wherefore, Mr. Demjanjuk respectfully requests that the Court enter an order
declaring that the Chief Immigration Judge is without authority under the regulations to conduct
removal proceedings.

## COUNT NO. 2
(Injunction -- Enjoining Immigration Judge from
Acting Ultra Vires)

41.    The allegations of paragraphs 1-37 are restated, realleged and incorporated
herein.

42.    The OSI has conducted a 28-year campaign against Mr. Demjanjuk to
denaturalize him and remove him from the United States, all as set forth more specifically above.

43.    In the course of this campaign, OSI has:

A.    in the first denaturalization case, committed  frauds on the court as found by
the Sixth Circuit in *Demjanjuk v. Petrovsky*, 10 F.3d 337 (6th Cir. 1993), and by the United States

District Court for the Northern District of Ohio in *United States v. Demjanjuk* 1998 U.S. Dist. LEXIS 4047 (Feb. 20 1998);

        B.      in the first denaturalization case, procured and introduced the false testimony of five Treblinka survivors that Mr. Demjanjuk was "Ivan the Terrible" of Treblinka;

        C.      in the first denaturalization case, knowingly or recklessly procured and introduced the false testimony of a former German guard at Treblinka that Mr. Demjanjuk was "Ivan the Terrible" of Treblinka;

        D.      in the first denaturalization case, knowingly or recklessly procured and introduced the perjured testimony of a former German guard at Treblinka concerning the procedures used in an OSI photo identification of Mr. Demjanjuk as "Ivan the Terrible" of Treblinka;

        E.      procured Mr. Demjanjuk's extradition by Israel as "Ivan the Terrible" of Treblinka, while withholding from the Israeli prosecutors exculpatory evidence then in OSI's possession;

        F.      procured a deportation order directing Mr. Demjanjuk's deportation to the Soviet Union, while withholding from the Immigration Judge exculpatory evidence in OSI's possession.

        G.      in both the first and second denaturalization cases, intentionally withheld from its own handwriting expert a substantially contemporaneous Cyrillic signature of Mr. Demjanjuk, thereby preventing its comparison with the "Demjanjuk" signature on the so-called Trawniki Card, the key item of evidence against Mr. Demjanjuk in the second denaturalization case; and

H.    in the second denaturalization case, procured and introduced false testimony from its handwriting expert regarding procedures used in a handwriting examination conducted by Mr. Demjanjuk's handwriting expert at his Israeli criminal trial.

44.    It is Mr. Demjanjuk's belief that OSI has sought and obtained the assignment of the removal case to Chief Immigration Judge Creppy instead of allowing it to be randomly assigned to one of the Immigration Judges assigned to handle cases arising in the Cleveland, Ohio area, and so alleges.

45.    The OSI's 28-year campaign against Mr. Demjanjuk, encompassing two full-blown denaturalization trials, with associated appeals and petitions for certiorari, a deportation proceeding, and an extradition proceeding (both with associated appeals and other review), a criminal trial for murder in Israel along with an appeal, as well as the Sixth Circuit and Northern District of Ohio proceedings which resulted in findings that OSI had committed frauds on the court, have left Mr. Demjanjuk drained of resources.

46.    Under these unique circumstances, where the prior protracted proceedings have been a direct result of OSI's misconduct already established by the Sixth Circuit and the United States District Court for the Northern District of Ohio, and in light of Mr. Demjanjuk's lack of resources, requiring Mr. Demjanjuk to go through a protracted  removal proceeding conducted by the Chief Immigration Judge along with appeals to the Board of Immigration Appeals, and perhaps to the court of appeals, in order to test the authority of the Chief Immigration Judge to conduct such a proceeding under the regulations, as well as delay by the Chief Immigration Judge in deciding the Motion to Reassign, constitutes irreparable injury with no adequate remedy at law and warrants the granting of injunctive relief.

47.    Wherefore, Mr. Demjanjuk respectfully requests that the Court issue preliminary and permanent injunctions:

A.    enjoining the Chief Immigration Judge from conducting the removal proceeding against Mr. Demjanjuk;

B.    ordering the Chief Immigration Judge to randomly assign the removal proceeding against Mr. Demjanjuk to an Immigration Judge routinely responsible for such matters arising in the Cleveland, Ohio area; and

C.    ordering the Attorney General to conduct the removal proceeding against Mr. Demjanjuk in a manner consistent with the regulations.

**PRAYER FOR RELIEF**

Mr. Demjanjuk respectfully requests that the Court enter an order:

1.    Declaring that the Chief Immigration Judge is without authority under the regulations to conduct removal proceedings;

2.    Enjoining the Chief Immigration Judge from conducting the removal proceeding against Mr. Demjanjuk, and

3.    Ordering the Chief Immigration Judge to randomly assign the removal proceeding against Mr. Demjanjuk to an Immigration Judge routinely responsible for such matters arising in the Cleveland, Ohio area;

4.    Ordering the Attorney General to conduct the removal proceeding against Mr. Demjanjuk in a manner consistent with the regulations;

5.    Awarding Mr. Demjanjuk the costs of this suit and such reasonable attorneys' fees as may be allowed by law; and

11

      6.      Granting Mr. Demjanjuk such other and further relief as to the Court may appear just and proper.

      Respectfully submitted:

                 JOHN DEMJANJUK

By: _____
          John Broadley

          John Broadley
             DC Bar No. 238089
          John H. Broadley & Associates, P.C.
          1054 31st Street NW, Suite 200
          Washington, D.C. 20007
          Tel. 202-333-6025
          Fax 202-333-5685
          E-mail jbroadley@alum.mit.edu

By:_____
          Thomas A. Elliot

          Thomas A. Elliot
             DC Bar No. 259713
             Elliot & Mayock, LLP
          1629 K Street NW, 12th Floor
          Washington, D.C. 20006
          Tel. 202-429-1725
          Fax 202-452-0161
          E-mail tom@elliotlaw.com

Dated: June 13, 2005